**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: SUBPOENAS ISSUED BY ROBERTO FUENTES TO THIRD-PARTY VIVID SEATS, LTD.<br><br>Third-Party Vivid Seats, Ltd.,<br>----------------------------------------------------------- | Case No.: |
| ROBERTO FUENTES<br><br>Plaintiff,<br><br>v.<br><br>KROENKE SPORTS & ENTERTAINMENT, LLC D/B/A TICKETHORSE, LLC, *et al.*<br><br>Defendant. | Pending in District of Colorado<br>Civil Action No. 1:13-CV-2481-PAB-CBS |

**MOTION TO QUASH SUBPOENA *DUCES TECUM***
**AND SUBPOENA TO TESTIFY AT DEPOSITION OR,**
**ALTERNATIVELY, FOR THE ENTRY OF A PROTECTIVE ORDER**

## I. INTRODUCTION

Vivid Seats, Ltd. ("Vivid") moves to quash the Subpoena *Duces Tecum* and Subpoena To Testify At Deposition served upon it in by Roberto Fuentes ("Fuentes") in this district. The subpoenas were issued by Fuentes, as the plaintiff in a case styled as *Roberto Fuentes v. Kroenke Sports & Entertainment, LLC d/b/a TicketHorse, LLC*, Civil Action No. 1:13-cv-02481-PAB-CBS ("Underlying Litigation"), pending in the United States District Court for the District of Colorado ("Colorado District Court").[1] Vivid is a non-party to the Underlying Litigation.

[1] Recent amendments to Fed. R. Civ. P. 45 changed the rule so that now the court in the pending action issues subpoenas for non-party discovery outside its jurisdiction. However, a motion to quash or for a protective order is to be heard by "the court for the district where compliance is required…" Fed. R. Civ. P. 45(d)(3)(A). The subpoenas seek Vivid's compliance in this district.

In the Underlying Litigation, Fuentes brought a class-action suit against Kroenke Sports & Entertainment, LLC ("KSE"), alleging that restrictions on the resale of tickets issued by KSE were unlawful.[2] KSE responded by arguing, in pertinent part for the instant motion, that the court lacked subject matter jurisdiction.

The Colorado District Court stayed discovery with the exception that Fuentes was allowed to proceed with very limited jurisdictional discovery. Specifically, Fuentes was granted leave to serve five requests for production of documents and five interrogatories on KSE as to the issue of whether the local controversy or home state exceptions to the Class Action Fairness Act ("CAFA") applied, a result that would divest the court of jurisdiction. Thereafter, Fuentes obtained discovery from KSM indicating that more than two-thirds of the purchasers of tickets were located in Colorado, a factor that all but portends that Fuentes' claims must be dismissed.

In a desperate attempt to find a way around the impact of this relevant information, Fuentes embarked on a fishing expedition by issuing overbroad and burdensome subpoenas upon a number of ticket resale marketplaces, including Vivid. In doing so, Fuentes requests documents and testimony concerning tickets resold to events at several venues in Colorado, including the Pepsi Center, Dick's Sporting Goods Park, ISTBANK Center, Paramount Theater and Hudson Gardens ("Kroenke Properties") from the lengthy period of September 11, 2010 to the present.

The overly broad discovery sought by Fuentes is unreasonable, unduly burdensome and would require the disclosure of a wealth of confidential and proprietary information which would cause irreparable competitive injury to Vivid. Vivid operates a full-service online marketplace which allows consumers to privately purchase and resell tickets to a wide variety of events. To

---

[2] Fuentes originally included the World Wrestling Entertainment, Inc. as a defendant, but voluntarily dismissed it.

sustain its business and make it competitive with other online exchanges, Vivid not only invests in stellar customer service, but also takes several steps to ensure protection of its customers' information, both buyers and sellers, from disclosure to third parties. This is achieved through: (i) acting as the intermediary on all purchases so as to keep the identity of the ticket reseller and purchaser confidential; (ii) allowing ticket resales to occur without specified seat information; (iii) utilizing McAfee Secure to protect data obtained by Vivid through transactions conducted on its website; and (iv) utilizing TRUSTe and VeriSign to further manage the private information of its customers and to further protect against disclosure of their information to third-parties. In addition to the foregoing, Vivid prohibits disclosure of customer information to all third-parties unless it is legally obligated to do so.

Not only is non-disclosure of customer information vital from the standpoint of basic privacy considerations, it is crucial as a means to protect ticket holders from adverse action in the event the original vendor of the ticket attempts to enforce ticket language restricting resales. As a result, non-disclosure of this information is of paramount importance to protect Vivid's customers and crucial for Vivid to remain competitive in the secondary market.

## II. PROCEDURAL HISTORY

Fuentes filed a class action suit under the CAFA against KSE alleging, *inter alia*, that language on tickets issued by KSE indicating that the tickets cannot be resold violates the Colorado Consumer Protection Act, COLO REV. STAT. § 6-1-718(3)(a) ("CCPA")[3], constitutes a breach of contract, violates the covenant of good faith and fair dealing and, alternatively, that the restrictions result in unjust enrichment. *See* Exhibit A – Complaint.

---

[3] The CCPA provides, in pertinent part: "It is void as against public policy to apply a term or condition ***to the original sale*** to the purchaser to limit the terms or conditions of resale." (emphasis added). "Original sale" is defined as "the first sale of a ticket by an operator." COLO REV. STAT. § 6-1-718(1)(b).

KSE, the owner of several sports teams and the operator of a number of entertainment and sports venues, responded to these claims by arguing, *inter alia*, that the CPPA does not prohibit applying language to tickets which restrict resale, that resale restrictions were never enforced such that a claim of damages can exist and that there is no jurisdiction by operation of the local controversy or home state exceptions to the CAFA. These arguments were embodied in various pleadings submitted by KSE, including two Motions to Dismiss, a Motion to Deny Class Certification and a Motion to Stay Discovery while resolution of its other motions was pending.

Importantly, the home state exception provides that a federal court must decline to exercise jurisdiction where two-thirds or more of the members of all proposed plaintiff classes and the primary defendants are citizens of the State in which the action was originally filed. 18 U.S.C. § 1332(d)(4). The local controversy exception provides that jurisdiction will not be exercised where: (i) more than two-thirds of the members of all proposed plaintiff classes are citizens of the State in which the action was originally filed; (ii) at least one defendant, which is liable for significant relief from the plaintiff class and from the State in which the action was originally filed, engaged in conduct forming a significant basis for the claims asserted by the proposed plaintiff class; and (iii) the principal injuries resulting from the conduct of each defendant were incurred in the State in which the action was originally filed. *Id.*

A hearing was held regarding the Motion to Stay Discovery, during which the Colorado District Court weighed the value of Fuentes' need for discovery and the local controversy exception to the CAFA. *See* Exhibit B – Joint Discovery Report, at Exhibit 3. Afterward, the Court determined Fuentes could serve only five interrogatories and five document requests upon KSE, but only in connection with establishing the existence of subject matter jurisdiction. *See* Exhibit C – Minute Order. Indeed, Fuentes' discovery was ultimately limited to whether: (i) more than two-thirds of the members of the proposed class are citizens of Colorado; (ii) at least

one defendant from whom the proposed class seeks significant relief is located in Colorado; (iii) the principal injuries were incurred in Colorado; and (iv) whether the same cause of action has been filed within the past three years against KSE.

After this ruling, Fuentes served discovery requests upon KSE, which yielded a Declaration from the designee of TicketHorse, LLC ("TicketHorse"), the ticketing service provider for original ticket sales for events at the Kroenke Properties. *See* Exhibit D – Declaration of Nick Collison. This Declaration confirmed over eighty percent of known customers requested a shipping address and had a primary address in Colorado. The Declaration further confirmed that a lack of primary address and shipping information could be caused by ticket purchases that were local in nature such as on-site at the Kroenke Properties, group purchases, tickets distributed to media accounts, consignment tickets or purchases at local kiosks.

In response to this fatal direct evidence, Fuentes, having no regard for the privacy concerns of Vivid or its customers, proceeded to issue and serve two overbroad and unduly burdensome subpoenas. The first was a Subpoena *Duces Tecum* which demands disclosure of confidential information concerning the billing and shipping address of customers who purchased or resold tickets to events at the Kroenke Properties from September 11, 2010 to the present. S*ee* Exhibit E – Subpoena *Duces Tecum*. A second subpoena requests Vivid appear and give testimony regarding online purchase and resale, despite the fact that deposition testimony is clearly unnecessary at this juncture of Fuentes' case. *See* Exhibit F – Subpoena to Testify at Deposition. Notably, neither subpoena establishes the relevance of the information sought nor how information from Vivid, only one of a number of secondary market exchanges, could ever be more probative than the information from TicketHorse. For all of these reasons, as well as the reasons set forth below, each of Fuentes' subpoenas must be quashed.

## III. STANDARD OF REVIEW

While discovery under Fed. R. Civ. P. 26 is liberal, the right to obtain discovery is not limitless. Rather, considerations as to reasonableness must be weighed, and where the discovery is sought from a non-party, somewhat greater protection is warranted. *Thayer v. Chiczewski*, 257 F.R.D. 466 (N.D.Ill. 2009); *Patterson v. Burge, No. 03 C 4433*, 2005 WL 43240, at *1 (N.D.Ill. Jan. 6, 2005). Thus, analysis is required as to the relevance of the material sought, the party's need for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. *Builders Association of Greater Chicago v. City of Chicago, No. 96 C 1122*, 2001 WL 664453, at *8 (N.D.Ill. June 12, 2001). Moreover, where the benefits of production do not outweigh the burdens of compliance, entry of an order denying the requested discovery is appropriate. *Id.*

In that regard, a subpoena may be quashed where it subjects the recipient to undue burden or where the subpoena requires disclosure of a trade secret or other confidential research, development or commercial information under circumstances where the information sought is not relevant or necessary to the action. Fed. R. Civ. P. 45(c)(3). Indeed, even where information is relevant and necessary, as set forth above, the need must be balanced against the potential for irreparable competitive injury to determine whether discovery may proceed as requested or whether the subpoena will be quashed. *Id.*

In addition to its ability to quash a subpoena, this Court has wide discretion to issue a protective order. In this regard, a protective order may be issued upon a showing of good cause, where necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Thus, in the event specific facts are shown which demonstrate that the challenged discovery will result in a clearly defined and serious

injury to the party seeking protection, a protective order should be entered. *Nieves v. OPA, Inc.*, 948 F.Supp.2d 887, 891-892 (N.D.Ill. 2013).

## IV. ARGUMENT

### *A. The Subpoenas Are Not Reasonably Calculated To Lead To Relevant Evidence.*

As set forth above, Fuentes is limited to discovery regarding the local controversy exception to the CAFA, which, in turn, means Fuentes is limited to obtain discovery from Vivid regarding whether more than two-thirds of the members of the proposed class are citizens of Colorado.[4] In that respect, Fuentes has already received disclosures from TicketHorse, which specifically identifies the purchase and shipping address for all original sales of tickets to events which occurred at the Kroenke Properties during the relevant period, and that discovery is fatal to Fuentes' jurisdictional claims. As a result the discovery requested from Vivid is moot.

It is painfully obvious that Fuentes, in a desperate attempt to salvage his claims, is on a fishing expedition to locate any information that could be constrained to support the now discredited argument that over one-third of the affected class members are located outside Colorado. Not only is this plain from the timing of the request, it is obvious by its very nature. However, even in the context of a fishing expedition, the information sought by Fuentes from Vivid is utterly useless to Fuentes' claims.

First, Fuentes' allegations are based upon application of the CCPA, the provisions of which clearly indicate the CCPA only applies to original sales, not ticket resales. C.R.S.A. § 6-1-718. As a result, even assuming Vivid could quantify, in a meaningful and helpful way, locational information for ticket resales has no value to Fuentes' claims as the location of purchasers and resellers of the tickets in question are not properly part of the potential class.

[4] Plainly, Vivid has no discoverable information regarding the remaining factors considered under the local controversy and home state exceptions to the CAFA, which center upon the domicile of the defendant and the location of the injury.

Second, the subpoenas were only issued after Fuentes received confirmation from TicketHorse, the vendor that handles *all original sales* of tickets for events at the Kroenke Properties, that *over eighty percent* of known purchasers and sellers were located in Colorado. Vivid, on the other hand, is only one of several secondary market exchanges, and the same ticket can be resold multiple times on Vivid's exchange. Considering the foregoing, not only is it obvious that Fuentes has received sufficient discovery regarding the viability of his jurisdictional claims which demonstrates jurisdiction no longer exists, it is equally clear that any information obtained from Vivid could never be as probative on the issue as the information provided by TicketHorse.

Considering the foregoing, it is clear Fuentes cannot meet basic threshold requirements as to the proper jurisdiction for his claims and under circumstances where the information from Vivid sought has no bearing on the jurisdictional aspects of his claims. As a result, the subpoenas must be quashed.

*B. The Subpoenas Must Be Quashed As They Seek Confidential Commercial Information Which May Irreparably Harm Vivid And Its Customers.*

As set forth above, a subpoena may be quashed where it seeks trade secrets or commercial information which may cause the deponent to suffer irreparable commercial injury. Fed. R. Civ. Proc. 45(c)(3)(B). In complete disregard of this limitation, Fuentes has served subpoenas upon Vivid requiring testimony and disclosure of all documents pertaining to the purchase or resale of a ticket to an event at a variety of properties and over a broad time period. The requests require Vivid to disclose the identity, shipping address and billing address of its customers.

This information is not disclosed by Vivid to the public, nor are Vivid's customers ascertainable through public means. Moreover, Vivid takes several precautions to protect its customers' identity from disclosure, including: (i) acting as an intermediary in transactions

between ticket resellers and purchasers so that each customer's identity remains confidential; (ii) establishing a privacy policy that is posted on its website and made available to encourage the public to use Vivid's services; (iii) permitting ticket resales to occur without specified seat information; (iv) utilization of McAfee Secure to protect data obtained by Vivid through transactions conducted on its website; and (v) utilization of TRUSTe and VeriSign to further manage the private information of its customers and to further protect against disclosure of their information to third-parties. *See* Exhibit G – Affidavit of Ted Pickus.

These protections have allowed Vivid to generate trust in the marketplace and with the public, which is key to its commercial success. It must provide a safe online marketplace in the context of protecting customers' identity and as a safe marketplace in the context of protecting season ticket-holders from adverse action which may otherwise result from resale of their tickets. Absent these protections, Vivid would be left vulnerable to irreparable injury from loss of its commercial footing as a trusted vendor. *Id.*

The foregoing, coupled with the fact that Vivid's customer list was developed by Vivid over the course of several years at great expense, is more than sufficient to demonstrate that the information sought by Fuentes is confidential and protected. *Lincoln Towers Ins. Agency v. Farrell*, 99 Ill.App.3d 353, 356-357 (1981). Thus, it is Fuentes' burden to establish disclosure of this information is relevant and necessary, a standard which Fuentes cannot meet. *Id.* This is because there are no factors which weigh in the favor of disclosure.

Indeed, the information sought is completely irrelevant to Fuentes' CCPA claims as the CCPA restrictions on ticket transfers only applies to original sales, not ticket resales. C.R.S.A. § 6-1-718. Further, as the resale restrictions at issue were never enforced, Fuentes cannot establish damages to support his claims of breach of contract, unjust enrichment or violation of the covenant of good faith and fair dealing. Finally, Fuentes already received disclosures from KSM

confirming location information for all original ticket sales for all events at the Kroenke Properties for the relevant period, which is sufficient to accurately determine whether the local controversy exception applies. Discovery beyond this, as set forth *supra*, amounts to nothing more than a fishing expedition under the guise of jurisdictional discovery.

Considering the foregoing, as well as the significant questions posed as to the vitality of Fuentes' claims, it is plain that a balance of the need for the information sought by Fuentes against the clear and imminent risk of harm to Vivid and its customers weighs decidedly in favor of quashing the subpoenas.

*C. The Subpoenas Must Be Quashed As They Are Overbroad And Unduly Burdensome.*

Fuentes was only granted leave to engage in jurisdictional discovery regarding the local controversy exception of the CCPA. However, instead of narrowly tailoring his discovery, Fuentes has issued two subpoenas requiring Vivid to appear and give testimony in this matter and to produce all documents identifying all tickets resold for events occurring at Kroenke Properties from September 11, 2010 through the present.

Plainly, Fuentes' discovery is overbroad, unduly burdensome and seeks information which is entirely outside the scope of the question of whether the Colorado District Court has jurisdiction. Not only is there absolutely no need for Vivid to provide testimony at deposition, there is no need for Fuentes to obtain all documents relating to purchases of tickets for events at Kroenke Properties since September 11, 2010. As a result, the subpoenas should be quashed.

*D. If The Subpoenas Are Not Quashed, A Protective Order Should Be Entered.*

As set forth previously, this Court also has wide discretion to issue a protective order which balances the need to protect Vivid from undue burden and irreparable commercial injury against the legitimate needs of Fuentes. Fed. R. Civ. Proc. 26(c). Clearly, good cause exists for

the entry of a protective order. As set forth *supra*, disclosure of the information sought by Fuentes will cause Vivid to suffer irreparable commercial injury and will violate the privacy expectations of its customers under circumstances where neither outcome is reasonable or reasonably necessary to adequately litigate the claims at issue in this dispute. Moreover, these disclosures seemingly serve no purpose as ticket resales are not covered under the CCPA and Fuentes is unable to establish damages to support his remaining claims.

Considering the foregoing, and considering the fact that Fuentes is only entitled to limited discovery, Fuentes should be limited to disclosure of a spreadsheet identifying the number of tickets purchased and sold to people with billing addresses inside and outside of Colorado for events occurring at Kroeneke Properties for the past year.

## V. CONCLUSION

For all the foregoing reasons, the subpoenas served on Vivid should be quashed, or in the alternative a protective order be entered by this Honorable Court.

Respectfully submitted,

/s/ Mark D. Belongia
Mark D. Belongia, Esq.

*Attorneys for Vivid Seats, Ltd.*
Mark D. Belongia (#6269391)
Email: mbelongia@ralaw.com
Christian M. Auty (#6285671)
Email: cauty@ralaw.com
Roetzel & Andress, LPA
20 South Clark, Suite # 300
Chicago, Illinois 60603
Telephone: (312) 662-1030
Facsimile: (312) 662-1040

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April, 2014, a true and correct copy of the above and foregoing *Motion to Quash Subpoena Duces Tecum And Subpoena To Testify At Deposition Or, Alternatively, For The Entry Of A Protective Order* was filed with the Clerk of the Court by using the CM/ECF system, electronic mail and U.S. Mail, which will send notice to the following counsel of record:

Steven L. Woodrow, Esq.
Megan L. Lindsey, Esq.
Edelson LLC
999 W. 18th Street
Suite 3000
Denver, Colorado 80202
swoodrow@edelson.com - email
mlindsey@edelson.com - email

Kevin D. Evans, Esq.
Steese, Evans & Frankel, P.C.
6400 South Fiddlers Green Circle
Suite 1820
Denver, Colorado 80111
kdevans@s-elaw.com - email

/s/ Mark D. Belongia